[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Vermilion Campaign Commt. for Jean A. Anderson v. Lorain Cty. Bd. of Elections*, Slip Opinion No. 2025-Ohio-3250.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-3250

THE STATE EX REL. CITY OF VERMILION CAMPAIGN COMMITTEE FOR JEAN A. ANDERSON ET AL. *v.* LORAIN COUNTY BOARD OF ELECTIONS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Vermilion Campaign Commt. for Jean A. Anderson v. Lorain Cty. Bd. of Elections*, Slip Opinion No. 2025-Ohio-3250.]**

*Elections—Mandamus—R.C. 3513.31(F)—Relators failed to strictly comply with the requirements to fill a vacancy caused by a withdrawn candidate under R.C. 3513.31(F)—Writ denied.*

(No. 2025-1079—Submitted September 3, 2025—Decided September 10, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Relators, the City of Vermilion Campaign Committee for Jean A. Anderson, Jean A. Anderson, and Beth A. Deck, commenced this action after respondents, the Lorain County Board of Elections and its members and director[1] (collectively, "the board"), declined to place Deck's name on the November 4, 2025 general-election ballot as a candidate for mayor of Vermilion to replace Anderson, who had withdrawn her candidacy. Contending that R.C. 3513.31(F) allows the committee to appoint Deck to replace Anderson on the ballot, relators seek a writ of mandamus ordering the board to place Deck's name on the November 4 general-election ballot as a candidate for Vermilion mayor. Relators have also filed a motion to strike the exhibit attached to the board's merit brief.

{¶ 2} We grant relators' motion to strike the board's evidence. But because relators have not complied with R.C. 3513.31(F)'s requirements for replacing a withdrawn candidate, we deny the writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Anderson Runs for Mayor and Then Withdraws

{¶ 3} Anderson is a registered elector and resident of Vermilion. On February 5, 2025, Anderson filed a nominating petition and statement of candidacy declaring her intent to run for the nonpartisan office of mayor of Vermilion. Anderson's petition consisted of 10 part-petitions, which contained 81 valid signatures. The board subsequently certified Anderson as a candidate for Vermilion mayor on the November 4, 2025 general-election ballot.

{¶ 4} Anderson used Form 3-N, a petition form prescribed by the Ohio secretary of state for use in municipal elections, for the candidate petition she filed with the board in February 2025. Consistent with R.C. 3513.261, Form 3-N

---

1. The Lorain County Board of Elections chairperson and members are, respectively, Marilyn Jacobcik and Michael E. Witte, Inez James, and Anthony B. Giardini, and its director is Paul R. Adams.

contains a section where the candidate can designate a committee to represent her and list the persons who make up the committee. It is undisputed that Anderson did not designate a committee in her part-petitions filed in February 2025 for her mayoral candidacy.

{¶ 5} However, on August 6, 2025, relators' counsel, Gerald W. Phillips, filed a letter with the board, identifying himself as "Chairman of Jean A. Anderson Campaign Committee." Enclosed with Phillips's letter was a document identified as a copy of Anderson's nominating petition. The copy of the petition enclosed with Phillips's letter showed Anderson's signature under the statement of candidacy and was dated December 2, 2024, just like the petition Anderson filed with the board in February 2025. But unlike the part-petitions that Anderson filed with the board in February 2025, the copy of the nominating petition that Phillips enclosed with his August 6 letter listed five persons whom Anderson purportedly designated as a committee to represent her. Phillips's letter stated the intention that the committee have the duties and functions provided by law, including those in R.C. 3513.31(F). That statute provides:

> If a person nominated by petition as an independent or nonpartisan candidate for election at the next general election withdraws as that candidate . . . , the vacancy so created may be filled by a majority of the committee of five, as designated on the candidate's nominating petition, if a member of that committee certifies in writing and under oath to the election officials with whom the candidate filed the candidate's nominating petition, not later than the eighty-sixth day before the day of the general election, the name of the person selected to fill the vacancy. The certification shall be accompanied by the written acceptance of the nomination

by the person whose name is certified and shall be made in the manner provided for a major political party.

{¶ 6} Phillips also enclosed with his letter a memorandum of law, purporting to support the propriety of declaring a five-member committee in support of Anderson's candidacy even though a committee had not been designated on the nominating petition she previously filed.

{¶ 7} Less than 20 minutes after Phillips's filing, Anderson filed a withdrawal of her mayoral candidacy with the board.

### B. Attempt to Replace Anderson with Deck on the Ballot

{¶ 8} On August 7, Phillips filed with the board a document titled "Certification by Committee to Fill Vacancy in Nomination." The certification stated that the committee for Anderson's mayoral candidacy had duly nominated Deck to replace Anderson on the ballot. Phillips attached his own affidavit to support the certification. Also included with the filing was Deck's sworn statement that she was accepting the committee's nomination to replace Anderson on the ballot as a candidate for mayor of Vermilion.

{¶ 9} On August 14, the board held a meeting to certify candidate petitions and issues for the November 4, 2025 general-election ballot. The board voted at the meeting to approve all petitions that had not previously been rejected for the November 4 general-election ballot. Deck's candidacy was not considered at the meeting.

{¶ 10} The following day, Phillips sent a letter to board director Adams, demanding that the board respond by 4:00 p.m. that same day to inform him of when the board would hold a meeting to vote on Deck's placement on the ballot. The Lorain County Prosecutor's Office sent a letter to Phillips later that day, informing him that the board would not place Deck's name on the ballot as a candidate for mayor of Vermilion.

4

**C. Relators File This Action**

{¶ 11} Relators commenced this expedited election action on August 18. In their amended complaint, relators seek a writ of mandamus ordering Deck's placement on the November 4, 2025 general-election ballot as a candidate for mayor of Vermilion. The board filed a timely answer to the complaint and the parties filed evidence and merit briefs in accordance with the schedule for expedited election cases under S.Ct.Prac.R. 12.08.

**II. MOTION TO STRIKE**

{¶ 12} Relators move to strike the exhibit that the board attached to its merit brief as evidence. The exhibit purports to be copies of Anderson's part-petitions filed with the board in February 2025 and board correspondence related to some of the part-petitions. We grant the motion and disregard the exhibit.

{¶ 13} Under S.Ct.Prac.R. 12.06(A), evidence in original actions in this court "shall be submitted by affidavits, stipulations, depositions, and exhibits." We have explained that "[e]vidence submitted under this rule 'should comport with the Rules of Evidence.'" *State ex rel. Maher v. Oda*, 2023-Ohio-3907, ¶ 13, quoting *State ex rel. Brenders v. Hall*, 1995-Ohio-106, ¶ 17, fn. 1. In this case, the board's exhibit is not authenticated by affidavit or otherwise under Evid.R. 901(A) or (B). Nor does the exhibit contain self-authenticating certified copies of public records under Evid.R. 902(4). The exhibit is therefore inadmissible. *See State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 2007-Ohio-3831, ¶ 39, 41 (striking unauthenticated exhibits filed in an original action).

**III. ANALYSIS**

{¶ 14} To obtain their requested writ of mandamus, relators must establish by clear and convincing evidence (1) a clear legal right to have Deck's name placed on the ballot as a mayoral candidate, (2) a clear legal duty on the part of the board to place Deck's name on the ballot, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. White v. Franklin Cty. Bd. of Elections*,

2020-Ohio-524, ¶ 6.  In this case, relators lack an adequate remedy in the ordinary course of the law because the general election is approximately two months away. *State ex rel. Clark v. Twinsburg*, 2022-Ohio-3089, ¶ 16.

{¶ 15} As to the remaining elements, this court must determine whether the board has engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions by refusing to place Deck's name on the ballot.  *State ex rel. New Carlisle v. Clark Cty. Bd. of Elections*, 2025-Ohio-814, ¶ 11.  Relators have made no allegation of fraud or corruption.  Therefore, the relevant inquiry is whether the board abused its discretion or clearly disregarded applicable law by not allowing Deck to replace Anderson on the ballot as a candidate for Vermilion mayor.

## A.  Relators Did Not Meet the Requirements for Replacing a Candidate Under R.C. 3513.31(F)

{¶ 16} It is undisputed that Anderson submitted a valid nominating petition for the office of Vermilion mayor and was certified for the November 4, 2025 general-election ballot as a candidate for that office.  Because Anderson has withdrawn as a candidate, relators contend that they have a clear legal right under R.C. 3513.31(F) to replace Anderson with Deck on the ballot and that the board has a clear duty under the statute to place Deck's name on the ballot.  A plain reading of R.C. 3513.31(F), however, compels denial of relators' requested relief.

{¶ 17} If a person nominated by petition as a nonpartisan candidate at the next general election withdraws her candidacy, like Anderson did here, R.C. 3513.31(F) allows the vacancy to be filled "by a majority of the committee of five, *as designated on the candidate's nominating petition*" if a member of that committee certifies under oath to the appropriate election officials the name of the person selected to fill the vacancy.  (Emphasis added.)  In this case, however, Anderson's nominating petition filed in February 2025 did *not* designate a

committee. Indeed, the space on the nominating petition for identifying a five-person committee was left blank on all the part-petitions that Anderson filed.

{¶ 18} "[I]t is well-settled that 'election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision expressly states that it is.'" *State ex rel. Maras v. LaRose*, 2022-Ohio-866, ¶ 23, quoting *State ex rel. Commt. for the Referendum of Lorain Ordinance No. 77-01 v. Lorain Cty. Bd. of Elections*, 2002-Ohio-4194, ¶ 49. R.C. 3513.31(F) does not state that substantial compliance is permitted, meaning that strict compliance is required. And strict compliance with R.C. 3513.31(F) requires, for a candidate's committee to fill the vacancy created by the candidate's withdrawal, that the committee be designated on the candidate's nominating petition. Anderson's nominating petition did not designate a committee. Because relators failed to strictly comply with R.C. 3513.31(F), the board did not abuse its discretion or disregard applicable law in declining to place Deck's name on the ballot to replace Anderson as a mayoral candidate.

**B. Relators' Argument Conflates the Validity of Anderson's Petition with the Requirements of R.C. 3513.31(F)**

{¶ 19} Though the nominating petition that Anderson filed in February 2025 did not designate a committee to represent her, relators argue that no statute foreclosed Anderson from designating her committee at a later date. Relators then argue that the committee Anderson designated on August 6, 2025, validly certified Deck to replace her on the general-election ballot under R.C. 3513.31(F).

{¶ 20} In support of their argument, relators rely on *State ex rel. Phillips v. Lorain Cty. Bd. of Elections*, 62 Ohio St.3d 214 (1991). But *Phillips* does not inform the result in this case. In *Phillips*, this court held that "R.C. 3513.261 does not expressly require the appointment of a committee" on a nominating petition. *Phillips* at 216. This court explained in *Phillips* that whereas previous versions of R.C. 3513.261 had required a candidate to name a committee on the nominating

petition, that requirement was eliminated in 1930 and does not exist in the current version of R.C. 3513.261. *Phillips* at 216. While the form of the petition includes a space for the candidate to designate a committee, the candidate may leave the space blank. *Id.* at 217. Accordingly, this court in *Phillips* rejected an argument that the nominating petitions of several candidates for municipal office were invalid for failing to designate a committee of five persons. *Id.* at 214, 217.

{¶ 21} Because Anderson was not required to designate a committee on her nominating petition when she filed it in February 2025, relators say they should not be foreclosed from utilizing R.C. 3513.31(F) to replace Anderson on the general-election ballot after designating a committee later. This argument is without merit, however, because it conflates the validity of Anderson's nominating petition filed in February 2025 with what R.C. 3513.31(F) requires before a withdrawn candidate can be replaced on the ballot. Put another way, whether Anderson's petition was validly certified for the ballot is a different issue than whether she can be replaced with another candidate after withdrawing her candidacy.

{¶ 22} As explained above, a candidate committee cannot fill a vacancy caused by the candidate's withdrawal from the election unless the committee was first designated on the candidate's nominating petition. In this case, Anderson did not designate a committee on the nominating petition she filed in February 2025. Therefore, the process set forth in R.C. 3513.31(F) could not occur, because there was no committee that could properly fill the vacancy created by Anderson's withdrawal.

## C. Failure to Designate a Committee on a Nominating Petition May Not Be Excused or Corrected to Invoke R.C. 3513.31(F)

{¶ 23} Relators expressly deny that there was any defect in the manner in which they designated Anderson's committee. In the alternative, relators argue that the omission of the committee members' names on Anderson's February 2025 nominating petition was a mere "technical defect" that could not have misled

anyone who signed Anderson's petition. Though not entirely clear, relators appear to suggest that because the omission was only a "technical defect," they should be allowed to correct it by way of Anderson's August 6 filing. This argument fails.

{¶ 24} A "technical defect" will be excused only when the applicable statute permits "substantial compliance." *See Stern v. Bd. of Elections of Cuyahoga Cty.*, 14 Ohio St.2d 175, 183-84 (1968). For example, this court has permitted minor deviations from the requirements of R.C. 3513.261, which provides that petition papers and statements of candidacy be only "substantially" in the form prescribed in that section. *See State ex rel. Osborn v. Fairfield Cty. Bd. of Elections*, 65 Ohio St.3d 194, 197 (1992); *State ex rel. Saffold v. Timmins*, 22 Ohio St.2d 63, 64 (1970).

{¶ 25} Although relators frame the failure to designate a committee on Anderson's nominating petition filed in February 2025 as a technical omission, that framing misses the point. Anderson's nominating petition was not rejected. As relators correctly (though unnecessarily) argue elsewhere, the "appointment of a committee . . . is not mandatory" under R.C. 3513.261, *Phillips*, 62 Ohio St.3d at 217. Thus, the failure to designate a committee was no defect at all—technical or otherwise—and did not affect Anderson's substantial compliance with R.C. 3513.261.

{¶ 26} What relators really seek is permission to alter Anderson's nominating petition by way of the belated August 6 submission designating a committee. But as noted above, this is not a question of substantial compliance; R.C. 3513.31(F) requires strict compliance, and the technical-defect exception is therefore inapplicable. Further, relators are barred from altering, correcting, or adding to Anderson's nominating petition. *See* R.C. 3501.38(I)(1) ("No alterations, corrections, or additions may be made to a petition after it is filed in a public office."). The board therefore did not abuse its discretion or disregard applicable law in refusing to place Deck's name on the ballot as Anderson's replacement.

### D. Policy Favoring Free and Competitive Elections Does Not Excuse Relators' Failure to Comply with R.C. 3513.31(F)

{¶ 27} Relators also argue that public policy favoring free, competitive elections should favor allowing Deck to replace Anderson on the ballot. In furtherance of this policy, relators contend that this court should not construe the election laws in such a way as to defeat this public policy. This argument is meritless.

{¶ 28} For their policy argument, relators rely heavily on *State ex rel. Flex v. Gwin*, 20 Ohio St.2d 29 (1969). In *Flex*, the sole Democratic candidate for a judicial office had been declared ineligible because of age by a separate decision of this court made before the primary election but too late for another candidate to qualify for the primary ballot. R.C. 3513.31 then (as now) permitted political parties to fill vacancies created when persons nominated at primary elections timely withdrew their candidacies. Former R.C. 3513.31, Am.H.B. No. 246, 129 Ohio Laws 1223; R.C. 3513.31(C). The board of elections in *Flex*, however, had refused to allow the relator to take the ineligible candidate's place on the general-election ballot, taking the position that there was no "vacancy" occasioned by withdrawal or death that would permit substitution of a candidate. *Id.* at 30. This court disagreed and granted a writ of mandamus ordering the relator's placement on the ballot, as a person duly appointed by his party's county central committee to fill the vacancy under R.C. 3513.31. *Id.* at 32.

{¶ 29} In granting the writ, this court opined, "[When] a political party has a candidate who appears to be qualified for nomination at a primary election, but who is determined to be ineligible to be a candidate at a time too late for another candidate to be duly nominated, a vacancy exists which the proper political agency is entitled to fill." *Id.* at 31. This court therefore interpreted the term "vacancy" in a manner that forwarded the "basic" policy that "a political party is entitled to have a candidate for each office at the general election." *Id.*

{¶ 30} Here, relators' reliance on the policy considerations emphasized in *Flex* is misplaced. As this court later explained, it "employed the policy favoring free and competitive elections" in *Flex* (and other cases) "to construe *ambiguous election statutes* and preserve candidates' placement on the ballot." (Emphasis added.) *State ex rel. White v. Franklin Cty. Bd. of Elections*, 65 Ohio St.3d 5, 7 (1992). But when the election statutes at issue are not ambiguous, "we cannot use public policy to circumvent them." *Id.* Such is the case here. For a candidate's committee to fill the vacancy occasioned by a withdrawn candidate, R.C. 3513.31(F) unambiguously requires the withdrawn candidate's committee to have been designated on the candidate's nominating petition. In seeking a writ of mandamus to place Deck's name on the ballot in Anderson's stead, relators are asking this court to circumvent R.C. 3513.31(F)'s unambiguous requirement.

## E. Constitutional Arguments

{¶ 31} Quoting *Williams v. Rhodes*, 393 U.S. 23, 30 (1968), relators also argue in their merit brief that the board's refusal to replace Anderson with Deck as a candidate for mayor of Vermilion unconstitutionally burdens the First Amendment "'right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively.'" They argue that the board's rejection of Deck's candidacy infringes on their rights to peaceably assemble and to petition for redress of grievances under Article I, Sections 1 and 3 of the Ohio Constitution.

{¶ 32} Relators' constitutional argument is largely conclusory. Without meaningful explanation, they argue that the board's refusal to give effect to the August 6, 2025 designation of Anderson's committee and to allow Deck to replace Anderson on the ballot "serves no legitimate state interests" and places an unconstitutional burden on relators by severely restricting ballot-access rights. Yet, on its face, there is nothing in R.C. 3513.31(F) that imposes a burden on one's candidacy. Indeed, if Deck wanted to run for mayor of Vermilion, she could have

timely filed her own nominating petition. And if Anderson wanted to be sure that someone would be able to replace her on the ballot if she withdrew her candidacy, all she had to do was designate a committee on her nominating petition to trigger R.C. 3513.31(F)'s procedures for filling the vacancy. Given the underdeveloped nature of relators' constitutional argument, we decline to address it. *See State ex rel. Cox v. Youngstown Civil Serv. Comm.*, 2021-Ohio-2799, ¶ 28; *see also Bronx Park S. III Lancaster, L.L.C. v. Fairfield Cty. Bd. of Revision*, 2018-Ohio-1589, ¶ 10 (declining to address a constitutional challenge when the party had "not formulated a clear argument" in support); *In re Application of Columbus S. Power Co.*, 2011-Ohio-2638, ¶ 19 ("it is not generally the proper role of this court to develop a party's arguments").

{¶ 33} More fundamentally, it is not even clear how mandamus is an appropriate remedy for the relators' constitutional claims, such as they are. Relators seek a writ of mandamus compelling the board to place Deck's name on the general-election ballot as a candidate for mayor of Vermilion. To the extent that relators' constitutional argument is asking this court to simply ignore R.C. 3513.31(F)'s plain text and order Deck's placement on the ballot, mandamus is an inappropriate remedy. Courts cannot create the legal duty that is enforceable in mandamus; the creation of a duty enforceable in mandamus is a legislative and not a judicial function. *State ex rel. Whitehead v. Sandusky Cty. Bd. of Commrs.*, 2012-Ohio-4837, ¶ 31.

### F. Attorney Fees

{¶ 34} Relators argue that they are entitled to recover their attorney fees under various exceptions to the American Rule, which generally provides that "a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation," *Wilborn v. Bank One Corp.*, 2009-Ohio-306, ¶ 7. In this case, however, we need not reach the applicability of the exceptions, because relators are not a prevailing party.

### III. CONCLUSION

**{¶ 35}** We grant relators' motion to strike the board's evidence.  But because relators failed to strictly comply with the requirements to fill a vacancy caused by a withdrawn candidate under R.C. 3513.31(F), we deny the writ.

Writ denied.

_____

Phillips & Co., L.P.A., and Gerald W. Phillips, for relators.

Anthony Cillo, Lorain County Prosecuting Attorney, and Leigh S. Prugh, Assistant Prosecuting Attorney, for respondents.

_____